IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

WILLIE CURRY JOHNSON,              )
                                  )
            Petitioner,            )
                                  )
      v.                           )          Civil Action No. 3:11cv829-MEF
                                  )                    (WO)
UNITED STATES OF AMERICA,          )
                                  )
            Respondent.            )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the court on a motion by Willie Curry Johnson ("Johnson") to

vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## I.   INTRODUCTION

On February 5, 2009, a jury found Johnson guilty of conspiracy to distribute at least

50 grams of crack cocaine and a detectable amount of cocaine, in violation of 21 U.S.C. §§

841(a)(1) and 846 (Count 1); possession with intent to distribute at least 5 grams of crack

cocaine and a detectable amount of cocaine on November 22, 2005, November 30, 2005, and

December 9, 2005, in violation of  21 U.S.C. § 841(a)(1) (Counts 2-4); and possessing a

firearm as a convicted felon, in violation of U.S.C. 922(g)(1) (Count 5).

At sentencing on June 9, 2009, over Johnson's objection, the district court imposed

a 2-level leadership role enhancement in calculating Johnson's advisory guidelines range.

After considering Johnson's advisory guidelines range of 360 months' to life imprisonment

and the 18 U.S.C. § 3553(a) factors, the district court imposed a 292-month sentence.

Johnson appealed, raising the following claims in the Eleventh Circuit:

1.    The district court erred in denying his motion to suppress the evidence seized from his trailer home because the warrant affidavit lacked sufficient corroboration of the confidential informant's information.

2.    The district court should have suppressed his confession because his *Miranda* rights waiver was a product of coercion.

3.    The evidence was insufficient to sustain his convictions.

4.    The district court erred in applying a U.S.S.G. § 3B1.1(a) leadership role enhancement at his sentencing.

Doc. No. 13-2 at 3-17.[1]

On May 24, 2010, the Eleventh Circuit Court of Appeals issued an opinion affirming Johnson's convictions and sentence. *United States v. Johnson*, 379 Fed. App'x 964 (11th Cir. 2010). Johnson filed a petition for a writ of certiorari in the United States Supreme Court, which that court denied on October 4, 2010. *Johnson v. United States*, 131 S.Ct. 359 (2010).

On September, 2011, Johnson, proceeding *pro se*, filed a motion under 28 U.S.C. § 2255 asserting the following as grounds for relief:

1.    The district court erred by applying the U.S.S.G. § 3B1.1(a) leadership role enhancement to his sentence.

2.    The district court erred when applying the U.S.S.G. § 1B1.3 relevant-conduct provisions at sentencing, specifically with

_____

[1] Document numbers are those assigned by the Clerk in the instant civil action or, where applicable, in Johnson's criminal proceedings, Case No. 3:08cr138-MEF. Page references are to those assigned by CM/ECF.

regard to attributable drug quantity.

3.    The Government engaged in prosecutorial misconduct by knowingly presenting false evidence in the form of falsified lab reports and falsified controlled-buy recordings.

4.    His trial counsel rendered ineffective assistance by failing to cross-examine narcotics investigators as to whether the controlled buys involved only powder cocaine.

Doc. Nos. 1 and 8.[2]

On October 25, 2012, Johnson filed an amendment to his § 2255 motion, asserting claims of ineffective assistance of trial counsel relating back to his claims that (1) the district court erred by applying the § 3B1.1(a) leadership role enhancement; (2) the district court erred when applying the § 1B1.3 relevant-conduct provisions to determine the quantity of drugs attributable to him; and (3) the Government engaged in prosecutorial misconduct. Doc. No. 19.

The Government maintains that Johnson's claims are either procedurally barred or without merit and that, consequently, he is not entitled to any collateral relief. *See* Doc. Nos. 13 and 21. Johnson has replied in opposition to the Government's submissions. *See* Doc. Nos. 16, 17, and 28. After due consideration of Johnson's § 2255 motion, the submissions supporting and opposing the motion, and the record in this case, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the § 2255 motion should be denied.

---

[2] Doc. No 8 is Johnson's memorandum in support of his § 2255 motion.

3

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are extremely limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B.   Substantive Claims in § 2255 Motion

### 1.   *Substantive Claim Raised and Resolved on Direct Appeal*

Johnson claims that the district court erred in applying the U.S.S.G. § 3B1.1(a) leadership role enhancement to his sentence.  *See* Doc. No. 8 at 2-3.  Johnson raised this same claim on direct appeal, where it was decided adversely to him by the appellate court as follows:

> Under U.S.S.G. § 3B1.1(c), a defendant's offense level is increased by two levels when "the defendant was an organizer, leader, manager, or

supervisor" of criminal activity that involved fewer than five participants and was not otherwise extensive. U.S.S.G. § 3B1.1(c). "[T]he assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement." *United States v. Jiminez*, 224 F.3d 1243, 1251 (11ᵗʰ Cir. 2000); *see also* U.S.S.G. § 3B1.1(c), cmt. n.2.

> Johnson asserted influence and control over [Coby] Taylor, [Dwight] Moss and [Demetric] Cox by fronting drugs for them to sell and requiring them to pay him out of the proceeds. Moss testified that when he failed to pay Johnson back in full, Johnson stopped fronting him drugs. Johnson also sometimes used runners to deliver drugs for him. Moss testified that at one point he worked as a runner for Johnson. Given this evidence, we cannot say the district court clearly erred in imposing a two-level leadership role enhancement.

*United States v. Johnson*, 379 Fed. App'x 964, 970-71 (11ᵗʰ Cir. 2010) (footnote omitted).

"The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11ᵗʰ Cir. 2000); *see also United States v. Rowan*, 663 F.2d 1034, 1035 (11ᵗʰ Cir. 1981). If a claim has previously been raised on direct appeal and decided adversely to a defendant, it cannot be relitigated in a collateral attack under § 2255. *See Nyhuis*, 211 F.3d at 1343. Furthermore, "[a] rejected claim does not merit rehearing on a different, but previously available, legal theory." *Id*.

The Eleventh Circuit decided this claim adversely to Johnson. Because the claim was raised and resolved in Johnson's direct appeal, this court will not reconsider the claim here. *Nyhuis*, 211 F.3d at 1343.

## 2.    *Substantive Claims Not Raised on Direct Appeal*

Johnson's § 2255 motion includes two substantive claims that were not raised on

direct appeal: (1) the district court erred when applying the U.S.S.G. § 1B1.3 relevant-conduct provisions to determine attributable drug quantities (*see* Doc. No. 1 at 7; Doc. No. 8 at 3-4); and (2) the Government engaged in prosecutorial misconduct by knowingly presenting false evidence (*see* Doc. No. 1 at 5; Doc. No. 8 at 4-7).

Ordinarily, if an available claim is not advanced on direct appeal, it is deemed procedurally barred in a § 2255 proceeding. *See Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989). A petitioner can avoid this procedural bar only by showing both cause for the failure to raise the claim on direct appeal and actual prejudice arising from that failure. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Mills*, 36 F.3d at 1055.

In his § 2255 motion, Johnson suggests that the ineffective assistance of his appellate counsel is the cause for his failure to raise the above-noted substantive claims on direct appeal. *See* Doc. No. 1 at 6-7. What is more, in the amendment to his § 2255 motion, he presents independent claims of ineffective assistance of trial counsel predicated on his same allegations about the drug amounts attributed to him as relevant conduct under § 1B1.3 and the Government's alleged prosecutorial misconduct. *See* Doc No. 19. Because ineffective assistance of counsel may satisfy the "cause" exception to procedural bar when an underlying claim is meritorious, *see Nyhuis*, 211 F.3d at 1344; *Greene*, 880 F.2d at 1305, this court will address Johnson's underlying substantive claims in the context of his allegations of ineffective assistance of counsel. These and Johnson's other ineffective-assistance claims

are reviewed below in this Recommendation.

## C.   Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted).  Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  The

prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

The Supreme Court has held a criminal defendant's appellate counsel is not required

to raise all nonfrivolous issues on appeal.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In so holding, the Court noted, "[e]xperienced advocates since time beyond memory have

emphasized the importance of winnowing out weaker arguments on appeal and focusing on

one central issue if possible, or at most on a few key issues."  *Id*. at 751-52.  Therefore, it is

difficult for a defendant to show his counsel was ineffective for failing to raise certain issues

on appeal, particularly if counsel did present other strong issues.  *Smith v. Robbins*, 528 U.S.

259, 287-88 (2000).

**1.**     ***Drug Quantities Attributed as Relevant Conduct under § 1B1.3***

        Johnson contends that his trial and appellate counsel rendered ineffective assistance

by failing to allege error in the district court's determination of the drug amounts attributable

to him under U.S.S.G. § 1B1.3.  *See* Doc. No. 1 at 7; Doc. No. 8 at 3-4; Doc. No. 19 at 2.

According to Johnson, the district court held him responsible for drug amounts based on the

conduct of others that he could not reasonably foresee.  Doc. No. 8 at 3-4.  He maintains that

the only drug amounts properly attributable to him were those involved in three sales that he

made to a confidential informant.  *Id*.

        Under § 1B1.3, a defendant is held accountable for his "relevant conduct," which

includes his own "acts or omissions" and also "all reasonably foreseeable acts and omissions

of others in furtherance of the jointly undertaken criminal activity."   U.S.S.G. §

1B1.3(a)(1)(A) and (B).  In drug-conspiracy cases, relevant conduct includes drug amounts

with which the defendant was directly involved and also "all reasonably foreseeable

quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3, cmt. n.2.; *United States v. Ismond*, 993 F.2d 1498, 1499 (11th Cir. 1993).

Johnson is simply incorrect in arguing that the only drug amounts attributable to him were those involved in his sales to the confidential informant. In calculating the drug amounts attributable to Johnson, the presentence investigation report ("PSI") considered the quantity of drugs purchased during controlled buys, reported in sworn testimony, and seized during the execution of the warrant to search Johnson's residence.[3] In addition to being charged with the three sales to the confidential informant, Johnson was charged with conspiracy to distribute at least 50 grams of crack cocaine and a detectable amount of cocaine. With regard to the conspiracy, the Government presented evidence that Coby Taylor, Dwight Moss, Frank Clayton, Demetric Cox, and Kerry Jackson purchased crack and powder cocaine from Johnson on a regular basis for as much as five years. *See* 379 Fed. App'x at 970. Taylor, Moss, and Cox testified that Johnson fronted the drugs to them, and they paid Johnson back from the proceeds. *Id*. Several witnesses also testified that Johnson sometimes used runners to deliver drugs for him. *Id*.

The drug amounts attributed to Johnson in the PSI – representing drugs distributed between 2003 and 2007 or seized during the execution of search warrants – comprised 41 grams of marijuana, 5.0372 kilograms of cocaine HCL, 60 lortab, and 17.2796 kilograms of

---

[3] PSI at 7, ¶ 22. *See also* PSI at 3-6, ¶¶ 4-16.

cocaine base.  PSI at 6, ¶ 16.  These amounts were converted to the marijuana equivalencies found at U.S.S.G. § 2D1.1, for a total marijuana equivalency of 345,592 kilograms of marijuana.  *Id*. at 7, ¶ 22.  Based on this amount, a base offense level of 38 was assigned.  *Id*; *see* U.S.S.G. § 2D1.1(c)(1).

The sentencing transcript reflects that Johnson's trial counsel objected to the calculations in the PSI – which were adopted by the district court – regarding the drug amounts attributable to Johnson as relevant conduct.  *See* Case No. 3:08cr138-MEF, Doc. No. 124 at 7-19.  Trial counsel argued strenuously against these calculations.  *Id*.  Thus, to the extent Johnson now alleges that his trial counsel failed to challenge the district court's determination of drug quantities attributable to him under § 1B1.3, his claim is factually baseless.  Consequently, Johnson is not entitled to any relief based on his claim that his trial counsel rendered ineffective assistance in this regard.

In addressing trial counsel's objection, the district court found as follows:

> I'm looking at the verdict form that was returned by the jury on February the 5th of this year.  In the conspiracy count, which is count one, the jury found beyond a reasonable doubt that Mr. Johnson had possessed with intent to distribute as part of the conspiracy the highest range that they could calculate, that they could use as a selection, 50 grams or more of cocaine base and five kilograms or more of powder cocaine.  So what I have to do or what I have done is I've gone back and looked at my notes from the trial.

> I began with Coby Taylor and his testimony about the amount of drugs that were either purchased by him from – beginning in 2003, leading up through the tape of the purchase on November 30th, 2005.

> Also looked at the testimony of Dwight Moss in which he testified about the quantities he purchased from the defendant beginning in 2002, and

particularly the quantities that he purchased in 2003, in which he was purchasing between three and four ounces of either crack or powder cocaine two to four times a week for the entire year.

Frank Crayton also testified about having purchased cocaine hydrochloride and cocaine base from Mr. Johnson. Beginning in 2002, he said that he purchased mostly crack cocaine. I don't recall him giving a quantity.

Kerry Jackson testified about having grown up with Mr. Johnson and having him sell – sold drugs as far back as 2002, but between 2006 and 2007, he witnessed Mr. Johnson selling crack cocaine or saw him cook crack cocaine, and between 2006 and 2007 saw Mr. Johnson selling drugs to others at his home in Jackson's Gap.

Demetric Cox testified about the amount of drugs that were fronted to him beginning in 2005.

Based upon the testimony that I heard at trial, I find that the guideline range that the probation office used to calculate the base offense level of 38 is reasonable and supported by the evidence in this case. So objection number two is denied, both as to the quantity calculations and as to the objection to the crack/powder cocaine ratios. The objection is overruled.

Case No. 3:08cr138-MEF, Doc. No. 124 at 18-19.

Johnson demonstrates no error in the district court's determination of the drug amounts attributable to him as relevant conduct under § 1B1.3. Johnson, the sole supplier of the drugs assessed to him based on his role in the conspiracy, could reasonably foresee that the crack and power cocaine he sold or fronted to others would be sold or cooked into crack and distributed. Consequently, his appellate counsel was not ineffective for failing to pursue this issue on appeal, and he is not entitled to any relief on this claim.

**2.    *Objection to Leadership Role Enhancement***

In the amendment to his § 2255 motion, Johnson asserts that his trial counsel was

12

ineffective for failing to object to the district court's application of the U.S.S.G. § 3B1.1(a) leadership role enhancement to his sentence. Doc. No. 19 at 2; *see* Doc. No. 8 at 2-3. This claim is frivolous, as the record shows that Johnson's trial counsel raised such an objection at sentencing, where it was overruled by the district court. *See* Case No. 3:08cr138-MEF, Doc. No. 124 at 24-27. As already noted, Johnson's appellate counsel pursued this claim on appeal, where the Eleventh Circuit found no error in the district court's application of the leadership role enhancement. *See* 379 Fed. App'x at 970. Johnson is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 3.    *Alleged Prosecutorial Misconduct*

In the amendment to his § 2255 motion, Johnson clams that his trial counsel was ineffective for failing to argue that the Government engaged in prosecutorial misconduct. Doc. No. 19 at 2; *see* Doc. No. 1 at 5; Doc. No. 8 at 4-8.[4] In this regard, Johnson alleges that the Government knowingly presented false evidence in the form of falsified lab reports and recordings of drug transactions that were falsified to create the impression that the confidential informant's controlled buys from Johnson took place on separate days and that Johnson sold cocaine base, as well as powder cocaine, to the confidential informant on those occasions. *Id.*

At trial, the Government presented evidence that a confidential informant (CI) cooperating in the investigation of Johnson's suspected drug-trafficking activities made

---

[4] Johnson's allegations regarding alleged prosecutorial misconduct are set forth in "Issue III" and "Issue IV" of his memorandum in support of his § 2255 motion (Doc. No. 8).

13

controlled buys of cocaine base and powder cocaine from Johnson on three separate dates: November 22, 2005; November 30, 2005; and December 9, 2005. *See* Case No. 3:08cr138-MEF, Doc. No. 118 at 24-32, 72-75, 82, 114-68.  The three controlled buys were the bases for Johnson's convictions under Counts 2-4 of the indictment for distribution of at least 5 grams of crack cocaine and a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1).

The CI and the narcotics investigators who monitored the controlled buys – DEA Agent Raymond DeJohn and Tallapoosa County Drug Task Force Investigator Josh McAlister – testified at trial.  For each controlled buy, the CI was searched, outfitted with an audio recorder, and placed under visual surveillance.[5] *Id*. at 31-32, 72, 114; *id*., Doc. No. 119 at 137-40.  After making the controlled buys, the CI turned over the purchased drugs to McAlister and DeJohn. *Id*., Doc. No. 118 at 36, 44-46, 137-39.  The drugs were then placed in plastic bags, sealed, and forwarded to the DEA's South Central Laboratory, in Dallas, Texas, for analysis. *Id*. at 39-43.  The CI and Agent DeJohn testified that the CI purchased approximately one ounce of crack cocaine and a quarter ounce of powder cocaine from Johnson in the November 22, 2005, controlled buy (*id*. at 30-32, 121-27); approximately one ounce of crack cocaine and a quarter ounce of powder cocaine in the November 30, 2005, controlled buy (*id.*, Doc. No. 118 at 147-52, 160-61; Doc. No. 119 at 3); and approximately

---

[5] The controlled buys that took place on November 30, 2005, and December 9, 2005, were also recorded on video. *See* Case No. 3:08cr138-MEF, Doc. No. 118 at 50-53; *id*., Doc. No. 119 at 141-45.

one ounce of crack cocaine and an unknown amount of powder cocaine in the December 9, 2005, controlled buy (*id.*, Doc. No. 118 at 168; Doc. No. 119 at 5-15).  The audio recordings of the controlled buys were admitted in evidence at trial.  *Id.*, Doc. No. 118 at 33-34, 48-52.

Paul Galat, a senior forensic chemist with the DEA in Dallas who tested the drugs purchased in the controlled buys, provided testimony about specific amounts.  Galat testified that the November 22, 2005, controlled buy yielded 21.1 grams of cocaine base (crack) and 9.2 grams of powder cocaine (*id.*, Doc. No. 119 at 88-91); that the November 30, 2005, controlled buy yielded 33.9 grams of cocaine base and 12.4 grams of powder cocaine (*id.* at 92-93); and that the December 9, 2005, controlled buy yielded 33.7 grams of cocaine base and 12.4 grams of powder cocaine (*id.* at 94).

The evidence here – in the form of lab reports, audio and video recordings of the controlled buys, and witness testimony – clearly established that, on three separate dates in November and December 2005, Johnson sold quantities of both cocaine base and powder cocaine to the CI.  Johnson presents no evidence, beyond his own fanciful speculation, that the lab reports or recordings were falsified.  Although he asserts, as "proof" that the lab reports from the DEA's South Central Laboratory in Dallas were falsified, that the signature of the lab director was "missing" from the reports, a review of those documents shows the signature of Darrell L. Davis, Laboratory Director, and that each of the exhibits analyzed contained both cocaine base and powder cocaine.  *See* Doc. No. 13-3 at 2-7.  Each exhibit was received by the Dallas lab on a separate date corresponding with its shipment from

Alabama shortly after each controlled buy.  *Id*. at 1-7.  Johnson's claims of falsified evidence depend on the acceptance of his unsupported assertions that Agent DeJohn and Investigator McAlister (not to mention the confidential informant) created wholesale fabrications (through the manufacture of a false paper trail as well as in their trial testimony) concerning the circumstances of the controlled buys and that Paul Galat, the DEA's forensic chemist in Dallas, then provided perjured testimony about the dates on which he received the drugs for testing and himself manufactured fraudulent lab reports relating to his receipt and testing of the drugs.[6]  This court cannot accept Johnson's unsupported assertions and speculation as a basis for relief.

Johnson presents, as supposed further proof of the fabrication of evidence against him, what is apparently a note generated by Agent DeJohn in the course of his investigation of Johnson.  *See* Doc. No. 8-5.  The note, which is dated December 9, 2005, contains an apparent transcription of a controlled phone call to Johnson's phone number placed on that

---

[6] *See* Doc. No. 16 at 7, where Johnson asserts:

> The law enforcement witness testified falsely about sending the drugs from the controlled buys to South Central Laboratory [in Dallas] and Paul Galat testified falsely about receiving the drugs and testing the drugs.  No controlled buys took place on November 22, 2005, or November 30, 2005.  The only controlled buy that occurred took place on December 9, 2005, and was a sale of marijuana at 3:02 p.m. The controlled buys that occurred at 10:49 a.m. and 12:27 p.m. on December 9, 2005, were sent to Alabama Department of Forensic Sciences.

Doc. No. 16 at 7.  The court would note here that the drugs sent for testing by the Alabama Department of Forensic Sciences were seized as a result of a search of Johnson's residence *in October 2007*.  The controlled buys took place in November and December of 2005, and, Johnson's assertions notwithstanding, the evidence shows that the drugs from those buys were sent to the DEA's Dallas lab.

date by a confidential informant, in which Johnson and the confidential informant agree to meet. *Id*. On the note, Agent DeJohn states that the phone call was placed to Johnson at 2:47 p.m. and ended at 2:48.pm. *Id*. Johnson submits a copy of his phone records reflecting that he did not receive a phone call at his number from anyone at 2:47 p.m. on December 9, 2005. *See* Doc. No. 8-4 at 2. (However, it must be noted that Johnson's phone records reflect that he received seven phone calls from Taylor between 10:27 a.m. and 12:54 p.m. on that date.) Johnson argues that the discrepancy between his phone records and the information on Agent DeJohn's note is somehow proof that evidence was fabricated against him. This apparent discrepancy is too slender a reed upon which to build a case of wholesale falsification by the Government and its agents. That reed grows more slender in light of the fact that no testimony was presented at trial concerning the matters reflected on Agent DeJohn's note, and Johnson is unable to present a convincing argument as to the exculpatory value of the discrepancy, other than to say that it exists.

Johnson wholly fails to show that the Government knowingly presented false evidence in the form of falsified lab reports and the recordings of the controlled drug buys. Consequently, he cannot demonstrate that his trial counsel was ineffective for failing to raise this issue and he is not entitled to relief based on this claim in his § 2255 motion.

## 4. *Failure to Cross-examine Investigators as to Whether Controlled Buys Involved Only Powder Cocaine*

Johnson contends that his trial counsel rendered ineffective assistance by failing to cross-examine the narcotics investigators as to whether the controlled buys in 2005 involved

only powder cocaine.  Doc. No. 8 at 7-8.

In the heading of this claim, Johnson appears to fault his trial counsel for failing to cross-examine narcotics investigators about this subject *at trial*, as opposed to waiting until sentencing to investigate the subject, as counsel purportedly did when cross-examining DEA Agent Tom Halasz at the sentencing hearing.  *See* Doc. No. 8 at 7, "Issue IV."  However, Agent Halasz did not participate in the three controlled buys in 2005.  And the only reason the question of whether the 2005 controlled buys included cocaine base came up at the sentencing hearing – and then only tangentially – was in relation to an inquiry into whether Johnson should be subject to an obstruction-of-justice enhancement based on recorded phone calls he made from jail after his arrest, which had been brought to Agent Halasz's attention and in which the Government argued Johnson was attempting to contact and influence witnesses to say he had only sold them powder cocaine.[7]  *See* Case No. 3:08cr138-MEF, Doc. No. 123 at 27-55.  In one of those calls, Johnson directed an acquaintance to talk to the CI and tell him that it was "all soft" – slang for powder cocaine.  *Id*. at 46-47.  Johnson's counsel suggested that his client was not attempting to influence the CI to lie, but rather attempting to "remind" him of facts.  Agent Halasz replied, "No sir, I don't believe so, because I'm familiar with the exhibits that were submitted that were purchased by . . . [the CI], and they were not all soft."  *Id*. at 47.

---

[7] The PSI recommended that the 2-level obstruction-of-justice enhancement be imposed pursuant to U.S.S.G. § 3C1.1.  *See* PSI at 8, ¶ 26.  However, the district court sustained defense counsel's objection to the imposition of this enhancement.  *See* Case No. 3:08cr138-MEF, Doc. No. 123 at 55.

Addressing Johnson's allegation of ineffective assistance in an affidavit filed with the court, his trial counsel states:

> Mr. Johnson apparently contends that I was deficient in my performance at trial because I did not cross-examine various witnesses on the issue of whether the controlled buys involved only powder cocaine and not crack cocaine based on the absence of any mention of crack cocaine on the audio tapes of the conversations, presumably thus casting doubt on the veracity of the testimony that he was involved with crack.  The trial transcript in this case shows that questions regarding whether the controlled buys only involved powder were not asked of the task force witnesses . . . the confidential informant, was however asked on cross about the statement that Mr. Johnson made as recorded on one of the audio tapes to the effect that he . . . could cook it (Trial Transcript, Vol. II, page 71.) [The CI] . . . was asked about this statement in the following manner:

> > Question [Defense counsel]: Was he telling you you would have to cook it?

> > Answer [the CI]: Yes.

> > Questions: So that would mean he didn't have any crack, did he?

> > Answer: He didn't have enough of what I wanted and told me, said I could cook it.

> > Question: So when he said in fact, you can cook it, he wasn't telling you he didn't cook it?

> > Answer:  I can't recall.

> [The CI] . . . was also asked on cross about a summary of his interview with Agent DeJohn in which the statement written by DeJohn indicated that [the CI] . . . had arranged to purchase cocaine base from Johnson which was out of the ordinary because the CS stated that he usually purchased cocaine HCL.  Trial Transcript, Vol. II, page 58.  In that exchange, [the CI] . . . indicated that Agent DeJohn wrote down the wrong information.  Therefore, the confidential informant . . . was in fact questioned on cross in these two

19

> exchanges about the issue of whether Mr. Johnson was only involved with powder.
>
>     [The CI] . . . testified on direct examination that he was getting crack cocaine from Mr. Johnson as early as 2004. See Trial Transcript, Vol. I, pages 94 -97. Additionally, the exhibits containing the items allegedly purchased at the controlled buys by [the CI] . . . contained crack and powder cocaine. See Exhibits 1A, 1B, 3A, 3B and 7A, 7B. See also trial testimony of Paul Galat, Trial Transcript Vol. II, page 83-109. Finally, the evidence seized pursuant to the search warrant in 2007, included, among other things, crack cocaine and powder cocaine. See Exhibits 13A and 13B. See also testimony of Pamela Kitchens, Trial Transcript, Vol. II, page 230-237.

Doc. No. 12 at 3-4.

Johnson's trial counsel cross-examined the Government's witnesses to the extent the evidence reasonably allowed. In cross-examining the CI counsel made effective use of ambiguities in the audio recordings of the controlled buys and apparent inconsistencies in statements Taylor had made to Agent DeJohn. However, counsel was hamstrung by the facts. The testimony of Agent DeJohn on direct examination (as did that of the CI) clearly indicated that each controlled buy yielded both cocaine base and power cocaine, and the forensic chemist's lab report corroborated this testimony. *See* Case No. 3:08cr138-MEF, Doc. No. 118 at 32-55; *id*., Doc. No. 119 at 88-94. Cross-examination of Agent DeJohn in attempt to contradict these facts would have proved fruitless. In cross-examining Agent DeJohn and Investigator McAlister, Johnson's counsel attempted to cast doubts on the CI's reliability as a confidential informant, questioned why Johnson was not arrested until almost two years after the controlled buys took place, and pointed out that many portions of the audio recordings of the controlled buys were unintelligible. *Id*., Doc. No. 18 at 62-74; *id*.,

20

Doc. No. 119 at 160-69. No amount of cross-examination on the question of whether the controlled buys included cocaine base or were limited to purchases of powder cocaine would have undermined the hard facts showing that Johnson sold both forms of cocaine in the controlled buys and that he was heavily involved in the distribution of both forms of the drug.

Johnson fails to demonstrate either deficient performance by his counsel or resulting prejudice. Therefore, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

**5.** ***Unsupported Allegations of Ineffective Assistance***

In his § 2255 motion, at Ground One, Johnson also makes the following cursory claim of ineffective assistance of counsel:

> Ineffective assistance of counsel
>
> 1. Counsel failed to adequately review discovery
>
> 2. Failed to call witnesses in my defense
>
> 3. Failed to investigate claims made by government.

Doc. No.1 at 4. Johnson's memorandum in support of his § 2255 motion, Doc. No. 8, does not contain a corresponding section with facts and arguments supporting any of the general claims in Ground One of his § 2255 motion. Such conclusory allegations do not entitle him to relief on a claim of ineffective assistance of counsel, because they fail to demonstrate deficient performance by counsel or resulting prejudice.

The court surmises that Johnson's conclusory allegations here may relate to his larger

21

assertion that the Government presented falsified evidence against him.  However, as discussed in Part II.C.3 of this Recommendation, above, Johnson's claims in this regard lack merit.

In his affidavit filed with this court, Johnson's trial counsel states, in pertinent part:

> In Mr. Johnson's Motion, he mentions several other grounds that he considers to be ineffective assistance of counsel although these matters are not addressed in his Memorandum in support of his Motion as they relate to his counsel.  See Doc. # 1, page 4 in the Court records (page 5 on the top of the actual document).  In his Motion he indicates that I failed to adequately review the discovery, that I failed to call witnesses in his defense and that I failed to investigate the claims made by the government.  Without more it is very difficult to address these issues although we painstakingly reviewed all the discovery, we investigated the claims made by the government and we attempted to locate witnesses who could testify on behalf of Mr. Johnson but were unable to locate any we felt would be helpful to his case.

Doc. No. 12 at 6.

Elsewhere in his affidavit, Johnson's trial counsel states:

> During our investigation of the case I met with Mr. Johnson on a number of occasions in the Montgomery City Jail and in the Lee County Detention Facility.  I also interviewed, or tried to interview, the individuals who were scheduled to testify against him.  Some of them would not discuss the case with me.  I, along with an associate in my firm, spent time in Dadeville, Alabama, with Mr. Johnson's family and friends trying to determine if there were witnesses who could testify on his behalf at trial.  I also interviewed a number of people in the Jackson's Gap area (where Mr. Johnson lived) to determine whether there were any witnesses there that would be helpful to Mr. Johnson.  Unfortunately, we determined that none of the people we interviewed would be helpful to our case.  These were the "cards we were dealt" in this case.
>
> ....
>
> Mr. Johnson also contends that I was deficient in failing to fully

investigate the lab reports which went to Texas because "the petitioner's drugs were sent to Auburn, Alabama. ..." See Doc. # 8, Memorandum, pg. 8. It is my understanding that the drugs which were the product of the controlled buys in 2005 were sent to Texas for analysis and the drugs which were seized as a result of the search of Mr. Johnson's trailer and surrounding trailers in 2007 were sent to Auburn. Thus, there were lab reports from two (2) separate laboratories, one in Texas and one in Auburn.

.....

Finally, the Memorandum in support of Mr. Johnson's 2255 Motion contends that my "failure to present defense expert witnesses to rebut the falsified lab reports and procedures" is deficient performance. I am unaware of any evidence that the lab reports were falsified unless Mr. Johnson is referring to his contention that his drugs were sent to Auburn and therefore the Texas reports are false. This issue is addressed in the preceding paragraphs....

Doc. No. 12 at 2-6.

Johnson has failed to show that his trial counsel rendered ineffective assistance, and his claim is therefore due to be dismissed

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Johnson be DENIED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before June 12, 2014**. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District

Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 29th day of May, 2014.


        /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE